IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

FILED
AUG 21 2013
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| Curtis Ray Brooks,<br>Plaintiff, | )<br>)<br>) |
| v. | ) 1:12cv1405 (LMB/JFA) |
| | ) |
| Lieutenant Liptrot, et al.,<br>Defendants. | )<br>)<br>) |

## MEMORANDUM OPINION

Curtis Ray Brooks, a Virginia inmate proceeding pro se, has filed a civil rights action, pursuant to 42 U.S.C. § 1983, alleging that Lieutenant A. Liptrot violated his Fourteenth Amendment right to procedural due process by placing him in a segregated housing unit ("SHU") and that Mr. Roth Nichols was deliberately indifferent to plaintiff's serious medical needs while plaintiff was housed in the SHU. For relief, Brooks seeks $500,000 in damages, transfer to either the Buckingham, Greensville, or Nottoway Correction Centers, a cease and desist order against all facilities using evidence based practice programs and expungement of any and all institutional infractions from his record. Each defendant filed a Motion for Summary Judgment and informed plaintiff that he had twenty-one (21) days to respond pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). Plaintiff has responded; accordingly, this matter is now ripe for disposition. For the below-stated reasons, summary judgment will be granted to each defendant, and plaintiff's other pending motions will be denied as moot.

### I. Background

The following facts are undisputed. Plaintiff has been confined at Sussex II State Prison since September 18, 2002 and was housed in general population in Housing Unit 4 through

August 18, 2011, when he was assigned to segregation in Housing Unit 3. Liptrot Aff. ¶ 4, ECF No. 31-1. Lt. Liptrot is a Housing Unit 4 Supervisor. Id.

On August 18, 2011, at approximately 10:25 a.m., Officer K. Johnson charged plaintiff with Disciplinary Offense Code #137A, lewd or obscene acts directed toward or in the presence of another. Id. ¶ 5, Enclosure B. Specifically, Officer K. Johnson observed plaintiff "in shower number #5 [sic] . . . [f]acing the control booth, moving his hand over his penis in an upward and downward motion." Id. The Disciplinary Offense Report reflects that Officer Johnson filed a disciplinary report at 11:34 a.m., on August 18, 2011, and Lt. Liptrot approved the report as written at 2:31 p.m. Id. Because plaintiff's behavior which resulted in the disciplinary charge was considered a threat to staff and security, Lt. Liptrot, as the Officer in Charge, authorized his placement in segregation on August 18, 2011. Id. ¶ 8. After plaintiff was moved to segregation, Lt. Liptrot was no longer responsible for monitoring his housing status. Id.

Plaintiff was in segregation from August 18, 2011, through September 14, 2011, when he was returned to the general population. Id. ¶ 8. The charge was dismissed on October 13, 2011 because it had not been properly served on plaintiff. Id. ¶ 9.

On April 16, 2012, plaintiff was moved from the general population in Housing Unit 1 to the SHU due to a new similar disciplinary charge, indecent exposure, in violation of Disciplinary Offense Code 137B. Id., Enclosure D. The Disciplinary Offense Report states that Officer T. Johnson "observed the above offender from the control booth in shower number 5 with the door slightly open stroking his penis in a back and forth motion." ECF No. 31-2 at 24. This offense took place in Housing Unit 1. Id. ¶ 11. Lt. Liptrot does not work in that building, and had nothing to do with the decision to place plaintiff in segregation. Id.[1]

---

[1] Plaintiff indicates in his response to Liptrot's Motion for Summary Judgment that he agrees with the above-stated facts.

2

Plaintiff was still housed in the SHU when he made requests for mental health treatment on September 15 and 18, 2012. In those requests he described experiencing stress due to prison conditions, difficulty sleeping and awakening in the middle of the night with cold sweats. Plaintiff asked for sleep medication and anti-depressants. Mem. Support Nichols's Mot. Summ. J. [hereinafter "Nichols's Mem."] 2, ECF No. 34. Mr. Nichols, a Mental Health Therapist at Sussex I, responded to plaintiff's request on September 18, stating that he would visit plaintiff on his next rounds in the SHU and that the department had a policy not to prescribe sleep medication when the only complaint was difficulty with sleeping. Id. Plaintiff submitted an informal complaint on September 25, 2012, alleging that Mr. Nichols demonstrated deliberate indifference to his medical needs because he had conducted rounds on September 19 and 20 and had not visited plaintiff. Id. at 3. That complaint was received in the mental health department on October 1, 2012. Nichols responded to plaintiff's complaint on October 8, stating that he could not give a specific date and time when plaintiff would be seen because he had to visit other patients, manage crisis situations, and also that his visits were limited by guard availability. Id. Mr. Nichols eventually met with plaintiff on October 11 and November 7. He determined that plaintiff's stress came primarily from his dissatisfaction with the decision to put him in non-privileged general population. Id. at 3–6. Plaintiff also met with other medical personnel, including the prison psychiatrist, a nurse, and the Director of Mental Health at the facility on November 6, 15, and 30, respectively. Id. at 5–7. Plaintiff was released back into the general population on February 15, 2013. Id. at 7.

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

3

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden shifts to the non-moving party to point out the specific facts which create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); however, "only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence . . . create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Accordingly, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita, 475 U.S. at 587.

### III. Analysis

A. Due Process Claim

The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend.

XIV, § 1. To prevail on either a procedural or substantive due process claim, inmates must demonstrate that they were deprived of "life, liberty, or property" by governmental action. See Plyler v. Moore, 100 F.3d 365, 374 (4th Cir. 1996).

It is well established that prisoners cannot be subjected to arbitrary discipline by prison officials. See Howard v. Smyth, 365 F.2d 428 (4th Cir. 1966). When a loss of statutory good-time credits or solitary confinement is at issue, the Supreme Court has mandated procedural safeguards for prison disciplinary hearings, including advance written notice of charges, written findings, and an opportunity, when consistent with institutional safety and correctional goals, for the inmate to call witnesses and present evidence in his defense. Wolff v. McDonnell, 418 U.S. 539, 563–67 (1974); Baker v. Lyles, 904 F.2d 925, 929 (4th Cir. 1990). Prison inmates have no protected liberty interest in the disciplinary hearing "procedures themselves, only in the subject matter to which they are directed." Ewell v. Murray, 11 F.3d 482, 488 (4th Cir. 1993) (emphasis in original). A decision by a prison disciplinary board satisfies due process if there is some evidence in the record to support the board's decision. Superintendent v. Hill, 472 U.S. 445, 454 (1985).

Plaintiff alleges that Lt. Liptrot violated his procedural due process right by placing him in the SHU without providing proper notice. He states that he suffered emotional harm from being improperly placed in the SHU and that as a result of that placement he lost employment rights. Summary judgment must be granted to Lt. Liptrot as to this claim. Virginia Department of Corrections ("VDOC") Operating Procedure ("OP") 861.1 governs Offender Discipline and establishes the Code of Disciplinary Offenses, the penalties for violation of this code, and the disciplinary process for all offenders incarcerated in VDOC institutions. Id. ¶ 5, Enclosure A. When an offender in Building 4 receives a disciplinary charge, Lt. Liptrot reviews the charge as

written by the Reporting Officer on the VACORIS database to ensure that it meets the requirements for accuracy and completeness as required by OP 861.1. Id. ¶ 5. If Lt. Liptrot approves the charge, then he chooses a date for the hearing based on the Inmate Hearings Officer's schedule and adds that information to the VACORIS database. Id. Lt. Liptrot or his designee would normally meet with the offender and read the charge and form DOC 11 (Referral to Institutional Classification Authority) to him explaining the details of the charge and informing the offender of the reason for his placement in segregation. Id.

OP 861.1 provides that the Disciplinary Offense Report should be served on the offender by midnight of the next working day following the offense. Id. Ex. 1 ¶ 9. OP 861.1 sets forth that the Officer in Charge or his designee acts as the serving officer for disciplinary reports. Id. ¶ 6. A correctional officer usually acts as Lt. Liptrot's designee for the service of disciplinary offense reports. Id. Lt. Liptrot would print a hard copy of the charge to be given to the officer so that it may be served on the offender. Id. After the charge is served and is returned to Lt. Liptrot, the service information, including the date and time of service and the name of the serving officer, would be entered into the VACORIS database. Id.

OP 861.1 provides that until the disciplinary hearing, offenders may remain in their existing housing status unless they pose a threat to persons, property, or facility security. Id. ¶ 8. If the offender is moved to segregation, the Institutional Classification Authority ("ICA"), which usually consists of the Unit Manager and a Counselor, provides a review of the offender's housing assignment. Id. ¶ 6.

Although Lt. Liptrot concedes that plaintiff did not timely receive a written copy of the August 18, 2011 charge, plaintiff has received the proper relief for this violation because the

6

charge was dismissed.[2] Additionally, per OP 861.1, Lt. Liptrot had the authority to place plaintiff in the SHU before the charge was served on plaintiff if he believed plaintiff's behavior constituted a threat to staff and security. In his affidavit, Lt. Liptrot states that he did find plaintiff's behavior to pose such threat. Therefore, Lt. Liptrot did not violate plaintiff's due process right by placing him in the SHU on August 18, 2011.

Lt. Liptrot did not violate plaintiff's rights when plaintiff was placed in the SHU on April 16, 2012 because Lt. Liptrot was not working in plaintiff's housing unit at that time and did not make the decision to place him in the SHU.

Plaintiff alleges that as a result of being placed in the SHU he suffered emotional harm and the loss of employment rights. He is not entitled to damages for such alleged injuries. Section 1997(e) prohibits inmates from bringing actions for mental or emotional injury suffered while in custody without a prior showing of physical injury. Plaintiff has neither alleged nor presented any evidence of physical injury. As to plaintiff's claim that he lost employment rights, it is well settled that inmates do not have a constitutionally protected liberty or property interest in prison employment, Altizer v. Paderick, 569 F.2d 812, 813 (4th Cir. 1978). For all these reasons defendant Liptrot's Motion for Summary Judgment will be granted.[3]

B. Deliberate Indifference

Plaintiff alleges that Mr. Nichols was deliberately indifferent to his serious medical needs. To state a cognizable Eighth Amendment claim for denial of medical care, a plaintiff must allege facts sufficient to show that jail officials were deliberately indifferent to a serious

---

[2] In his response to Lt. Liptrot's Motion for Summary Judgment, plaintiff disputes Lt. Liptrot's contention that plaintiff received a review of the August 18 charge on August 22; however, the issue is irrelevant because the charge eventually was dismissed.

[3] Because the Court has determined that plaintiff's claims are without merit, consideration of defendants' qualified immunity arguments is not necessary.

7

medical need. Estelle v. Gamble, 429 U.S. 97, 105 (1976); Staples v. Va. Dep't of Corr., 904 F.Supp. 487, 492 (E.D. Va. 1995). Specifically, a plaintiff must allege two distinct elements to state a claim upon which relief can be granted. First, he must allege a sufficiently serious medical need. See, e.g., Cooper v. Dyke, 814 F.2d 941, 945 (4th Cir. 1987) (determining that intense pain from an untreated bullet wound is sufficiently serious); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978) (concluding that the "excruciating pain" of an untreated broken arm is sufficiently serious). Second, he must allege deliberate indifference to that serious medical need. Under this second prong, an assertion of mere negligence or even malpractice is not enough to state an Eighth Amendment violation; instead, plaintiff must allege deliberate indifference "by either actual intent or reckless disregard." Estelle, 429 U.S. at 106; Daniels v. Williams, 474 U.S. 327, 328 (1986); Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). The prisoner must demonstrate that a defendant's actions were "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Id. (citations omitted).

Although plaintiff's medical conditions described as feeling stressed, having trouble sleeping and awakening with cold sweats, are hardly sufficiently serious medical conditions to warrant constitutional protection, even if these conditions qualified for protection, the facts in this case establish that Mr. Nichols was not deliberately indifferent to plaintiff's medical needs. Plaintiff's own allegations in his response to Mr. Nichols's Motion for Summary Judgment acknowledge that Mr. Nichols did respond to plaintiff's complaints. As Mr. Nichols states in his sworn affidavit, after their first meeting when Mr. Nichols explained to plaintiff that his "stress" was largely the result of dissatisfaction with the housing unit prison staff, plaintiff "informed me that his concerns had been sufficiently addressed . . . ." Nichols Aff. ¶ 10. Mr. Nichols consulted with the prison's psychiatrist about plaintiff's condition, id. at ¶ 13, and, at a meeting

8

with plaintiff on November 7, advised plaintiff to request a medical appointment after plaintiff complained of vertigo and other symptoms, id. at ¶ 16. Mr. Nichols also discussed coping strategies with plaintiff to assist him with stress management. Id.

The record shows that Mr. Nichols and other medical personnel were responsive to plaintiff's requests for assistance and were not deliberately indifferent to any serious medical needs. Therefore, Mr. Nichols's Motion for Summary Judgment will be granted.

## IV. Conclusion

Because Lt. Liptrot's and Mr. Nichols's motions for summary judgment will be granted, plaintiff's Motion for Default Judgment as to Mr. Nichols, as well as plaintiff's motions to dismiss defendants' motions for summary judgment, and Motion for Preliminary Injunction will be denied as moot. An appropriate Order shall issue.

Entered this 21st day of August 2013.

Alexandria, Virginia

/s/
Leonie M. Brinkema
**United States District Judge**